IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BERNARD JONES                                                                   PLAINTIFF

v.                          Civil No. 4:16-cv-4047

CORPORAL GRIFFETH;
DICKSON, OFFICER
MILLER COUNTY DETENTION CENTER;
LIEUTENANT ADAMS; and
SERGEANT DEWAYNE FLOYD                                DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed *pro se* by Plaintiff Bernard Jones, under 42 U.S.C. § 1983. Currently before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 32). Plaintiff filed a Response. (ECF No. 39). Defendants filed a Reply. (ECF No. 40). The Court finds the matter ripe for consideration.

### I. BACKGROUND

Plaintiff originally filed his Complaint on May 13, 2016 in the Eastern District of Arkansas. (ECF No. 2). On May 17, 2016, the case was transferred to the Western District of Arkansas, Texarkana Division. (ECF No. 6). Plaintiff is no longer incarcerated and now resides in Hope, Arkansas. Plaintiff is suing Defendants Officer Dickson, Lieutenant Golden Adams, Sergeant Dewayne Floyd, and Byron Griffie[1] in their individual and official capacities. Plaintiff is seeking compensatory damages and requests that each Defendant be fired.

On November 6, 2015, Plaintiff was brought to the Miller County Detention Center ("MCDC") through the inmate 309 Program.[2] Plaintiff was taken back to the Arkansas

---

[1] Defendant Byron Griffie is incorrectly identified in the case caption as "Corporal Griffeth".

[2] Arkansas Act 309 is a state program that places inmates who meet certain criteria ("309 inmates") in local jails to be used as labor in order to reduce the number of inmates in state prisons.

Department of Correction ("ADC") on April 28, 2016. During the time Plaintiff was at the MCDC, it was suspected that the 309 inmates were bringing contraband into the facility. On March 19, 2016, Defendants conducted an impromptu strip search of the 309 inmates, including Plaintiff, to confirm there was no contraband. Defendants searched Plaintiff outside of Max Hall 1. According to the affidavit of Defendant Adams, there is a camera in this location but there were no females present at the time of the search. (ECF No. 34-2, ¶ 4). Defendants state if a female officer witnessed the strip search, it was an inadvertent sighting over the camera. (ECF No. 33).

On April 19, 2016 three 309 inmates, including Plaintiff, went out the front gate of the MCDC to the parking lot. Defendant Floyd went out and advised them that they were not supposed to be out there while court was in session. Plaintiff started to protest and complain to Defendant Floyd and then became defiant and started raising his voice. Due to this incident and others,[3] Plaintiff was escorted to the Receiving and Discharge area of the MCDC and placed in a cell. Plaintiff then shouted and argued with Defendants Adams and Floyd and threw down his mat. (ECF No. 34-1, ¶ 12). On April 20, 2016, the 309 inmate coordinator was contacted and informed that Plaintiff was no longer needed at the MCDC. Plaintiff remained in the Receiving and Discharge area for nine days before he was transferred back to the ADC.

The MCDC has an established grievance procedure for inmates to utilize when they believe their constitutional rights have been violated. (ECF No. 34-1, pgs. 9-10). The grievance procedure is utilized through a kiosk system at the MCDC. The kiosk is located directly next to the phones in the Receiving and Discharge area.

Plaintiff alleges his constitutional rights were violated when the Defendants "order me out of my clothes to conduct a strip search for some unforeseen reason in front of the cameras as well

---

[3] Plaintiff was disciplined on March 30, 2016 for failure to obey orders and being disrespectful. (ECF No. 34-1, ¶ 7)

as all the female staff working in the control room." (ECF No. 2). He also claims he was locked up for ten days without access to a shower or phone and was then transferred back to prison "for no other reason other than retaliation." (ECF No. 2). Defendants argue they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendants did not violate Plaintiff's Fourth Amendment rights when the strip search was conducted; (3) Plaintiff was afforded his right to due process; (4) Defendants are entitled to qualified immunity; and (5) there is no basis for official capacity liability.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no

3

genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

1. <u>Failure to Exhaust Administrative Remedies</u>

The Prison Litigation Reform Act ("PLRA") provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). The Supreme Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction." *Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007).

The Eighth Circuit Court of Appeals has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (explaining that a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

There is no dispute that the MCDC had a grievance procedure in place for detainees to use at the time the incidents occurred which Plaintiff claims resulted in a violation of his rights. (ECF No. 34-1, pgs. 9-10). In his Complaint, Plaintiff first indicates by checking "Yes" that he did file a grievance, but notes, "I was directed to the Internal Affairs." (ECF No. 1). However, in response to the next question, "Did you completely exhaust the grievances(s) by appealing to all levels within the grievance procedure?" he again checks "Yes," but states, "They would not present me with one (1) so I took my complaint to the internal affairs at said Jail." Then in his Response to the Motion for Summary Judgment, Plaintiff claims he was not afforded the opportunity to use the grievance system at the MCDC. He alleges that he "filed a report to the Internal Office in Pine Bluff Ar. Before any action could be taken inmate was transfer from Miller county Detention." (ECF No. 39, p. 2).

The record demonstrates that Plaintiff did not file any grievance with the MCDC relating to the claims set forth in this lawsuit. In addition, Plaintiff has not provided the Court with a copy of the report he claims he filed with "internal affairs" at the MCDC or with the office in Pine Bluff, Arkansas. Plaintiff has failed to present any specific facts to support his allegation that he was not given an opportunity to use the grievance procedure. To the contrary, his own allegations with respect to his attempt to file grievances are inconsistent and are contradicted by the record so that

5

no reasonable jury would believe him. The grievance procedure at the MCDC is utilized through a kiosk system and Plaintiff was allowed access to the kiosk system during his entire incarceration, including the time he was housed in Receiving and Discharge. The kiosk system is located directly next to the phones in the Receiving and Discharge area. The record indicates Plaintiff regularly utilized the telephone during his time in the Receiving and Discharge area but did not utilize the grievance procedure through the kiosk system. (ECF No. 40-1). Neither of the exceptions to the PLRA exhaustion requirements are applicable in this case. Accordingly, each of Plaintiff's claims are barred as a matter of law for failure to exhaust his administrative remedies. Even assuming *arguendo* that Plaintiff could demonstrate that one of the exceptions to the PLRA exhaustion requirement should apply in this case, as discussed below, Plaintiff's claims also fail on the merits.

    2. <u>Strip Search</u>

The Fourth Amendment prohibits unreasonable searches. *Goff v. Nix*, 803 F.2d 358, 363 (8th Cir. 1986). To determine whether a search is unreasonable, the Court must balance the "need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In the context of a strip search conducted in a detention center, the Court must consider: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating the search; and (4) the place where the search is conducted. *Id.* In *Bell*, the Supreme Court noted, "[a] detention facility is a unique place fraught with serious security dangers," and held that visual body cavity searches of inmates after every contact visit did not violate the Fourth Amendment. *Id.* at 559.

In *Florence v. Board of Chosen Freeholders of County of Burlington*, the Supreme Court stated that correctional officers must be allowed to conduct an effective search of detainees, even those held for minor offenses, and correctional institutions have a strong interest in preventing and

deterring the smuggling of money, drugs, weapons, and other contraband. 566 U.S. 318, 328-30 (2012). The Eighth Circuit has recognized that a prison's security and safety of the inmate outweigh privacy concerns in situations similar to the one presented here. *See Franklin v. Lockhart*, 883 F.2d 654, 656-57 (8th Cir. 1989) (visual body cavity searches conducted in view of other prisoners upheld absent substantial evidence that it was an exaggerated response to security concerns).

Here, there is no dispute that Defendants conducted a strip search in response to a concern that the 309 inmates were smuggling contraband into the MCDC. Each Defendant who participated in the strip search of Plaintiff is male and it is undisputed that no females were present when the search was conducted. The only possibility that a female officer may have seen the strip search would have been an inadvertent sighting over the control room camera. The Eighth Circuit has held that prison administrators did not violate the Fourth Amendment rights of inmates by allowing intermittent visual surveillance of male inmates by female guards while the inmates used showers and bathrooms or slept without clothing in the cells. *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990). The Eighth Circuit has also held that the use of cameras to monitor activities from a control booth is reasonable, even when body-cavity searches are involved. *See Story v. Foote*, 782 F.3d 968, 972 (8th Cir. 2015) (citing *Franklin v. Lockhart*, 883 F.2d 654, 656 (8th Cir. 1989)).

The Court finds there are no genuine issues of material fact and the strip search conducted on Plaintiff was reasonable and necessary. Accordingly, Defendants are entitled to summary judgment on this claim.

3. Conditions of Confinement

Plaintiff alleges he was locked up for ten days without access to a shower or phone before being transferred back to the ADC. The Court construes this as a condition-of-confinement claim.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows that "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Bell*, 441 U.S. at 535.

Between April 19, 2016 and April 28, 2016, Plaintiff was housed in a cell in the Receiving and Discharge area of the MCDC following an incident for which he was reprimanded. Although

8

Plaintiff claims he did not have access to a shower or use of the phone during this time, the record indicates otherwise. According to the affidavit of Defendant Landreth, Plaintiff was allowed an hour out of his cell every day, shower usage, and allowed to use the phone during this time. (ECF No. 40-1, ¶ 4). The phone records from the MCDC clearly demonstrate Plaintiff made numerous phone calls during this time. Plaintiff made five phone calls on April 22; five phone calls on April 24; two phone calls on April 25; and two phone calls on April 27. (ECF No. 40-1). It appears to that Plaintiff used his out-of-cell time to make phone calls rather than shower. Plaintiff offers no evidence to the contrary, other than his own unsubstantiated allegations.

Even if we take Plaintiff's allegation that he was not allowed to shower for nine days to be true, he has not shown his living conditions denied him of the minimal measure of life's necessities nor has he demonstrated the issues he complains of posed a substantial risk of serious harm to his health. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Court finds any discomfort Plaintiff may have suffered while in the Receiving and Discharge cell at the MCDC to be *de minimis*, and as a result, does not implicate the Constitution. *See Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Accordingly, Plaintiff's condition-of-confinement claims fail as a matter of law.

  4. Retaliation

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation in order to be actionable. *Id.* Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994).

9

To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action. *See L.L. Nelson Enterprise Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 807-08 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

A retaliation claim fails if the alleged disciplinary violations were issued for the actual violation of prison rules. *See Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990). The courts have found that "some evidence" of a rules violation is sufficient to defeat a retaliation claim, even if the inmate disputes the violation. *Hartfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). Moreover, the Eighth Circuit has stated that an inmate does not have a liberty interest in avoiding disciplinary confinement because it is not atypical to normal prison life. *Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996).

Plaintiff claims he was transferred back to "prison" for no other reason than "retaliation." (ECF No. 2). However, Plaintiff has not presented any specific facts to identify what, if any, protected activity he engaged in prior to his placement in the Receiving and Discharge cell. The record is clear that Plaintiff was involved in at least two incidents for which he was disciplined for his failure to obey orders and being disrespectful. Consequently, Plaintiff has not presented facts sufficient to support a claim of retaliation and his claim fails as a matter of law.

5. <u>Official Capacity Claim</u>

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental

10

entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, an official capacity claim against Defendants is treated as a claim against Miller County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, Plaintiff "must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, the Eighth Circuit outlined the necessary elements for establishing the existence of an unconstitutional custom:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

725 F.3d 825, 828 (8th Cir. 2013) (citations omitted).

The record does not reflect any evidence of an unconstitutional policy or custom of Miller County that contributed in any way to a violation of Plaintiff's civil rights. Accordingly, Plaintiff's claims against Defendants in their official capacities fail as a matter of law.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No.32) is hereby **GRANTED**.  Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.  A separate Judgment consistent with this Opinion shall issue.

**IT IS SO ORDERED** this 5th day of October, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge